UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONNIE THOMAS DAWSON,

    Petitioner,

v.

THOMAS WINN,

    Defendant.

Case No. 19-10388
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [1] AND DENYING CERTIFICATE OF APPEALABILITY**

Following an assault and robbery of a gas station employee in Detroit, Donnie Thomas Dawson was identified in a line-up as the perpetrator by the employee and another witness. Dawson was convicted after a bench trial in Wayne County Circuit Court of armed robbery, Mich. Comp. Laws § 750.529, assault with intent to do great bodily harm, Mich. Comp. Laws § 750.84, carrying a concealed weapon, Mich. Comp. Laws § 750.227, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. His convictions were affirmed on direct appeal. He now brings this action for a writ of habeas corpus under 28 U.S.C. § 2254.

This habeas petition raises two claims: (1) that Dawson's trial counsel was ineffective for failing to raise a speedy-trial challenge, failing to present a defense witness, and for advising Dawson to waive his right to a jury trial, and (2) that Dawson was subjected to an impermissibly suggestive pretrial identification procedure. (ECF No. 1, PageID.4, 6.) These claims are without merit and will be denied. The Court will also deny Dawson a certificate of appealability.

**I.**

"The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016). According to the Michigan Court of Appeals,

> In the early morning hours of January 27, 2015, defendant and Joseph Brown drove to a Detroit gas station in a black, two-door Monte Carlo with plastic covering the rear passenger side window. The men went into the gas station convenience store to purchase cigars. Gordon Johnson, who did odd jobs and served as security at the gas station, was standing near the doorway. On the way out, defendant pulled out a pistol and jabbed it in Johnson's side. Defendant forced Johnson to walk toward defendant's vehicle. Defendant then hit Johnson several times in the face with the pistol, breaking several of Johnson's teeth, and Brown punched him. Defendant and Brown took $30 and some marijuana from Johnson and stole his "True Religion" jacket. When Brown turned his back, Johnson seized the opportunity. He punched defendant in the face and ran away. As Johnson ran, defendant fired the pistol toward him. None of the bullets hit their target. Johnson and gas station attendant, Mohammed Bin Rabed, later described defendant as tall, with "puffed up hair," and wearing a yellow turtleneck shirt.
>
> Approximately 10 minutes later, Breaun Glasper noticed defendant and Brown in a liquor store parking lot. She described their vehicle as a black Monte Carlo with plastic over the rear passenger window. As Glasper left the liquor store, defendant and Brown began to walk toward her. Brown carried a pistol in his hand. Glasper escaped before the men could reach her.
>
> The police tracked down defendant and Brown approximately one hour later. The men were still traveling in a black Monte Carlo with the rear passenger window covered in plastic. Defendant was still wearing a yellow shirt. The arresting officers did not find a pistol or the stolen money or jacket. The following day, Johnson and Glasper both identified defendant at a corporeal lineup.

*People v. Thomas-Dawson*, 2017 WL 3316945, at *1 (Mich. Ct. App. Aug. 3, 2017) (footnote omitted).

Following his conviction, Dawson was sentenced to concurrent prison terms, the longest of which is a nine-to-fifteen-year sentence for armed robbery, as well as a mandatory two-year consecutive sentence for the firearm conviction.

Dawson filed an appeal of right in the Michigan Court of Appeals. His appellate counsel filed a brief that raised several claims challenging the sufficiency of the evidence, the sentence, and the imposition of fees and costs.

Dawson also filed his own pro se supplemental brief that raised the same two claims being asserted in the habeas petition:

> V. Trial counsel was ineffective for not raising a speedy trial motion violating Mr. Dawson's VI Amendment right to a speedy trial and failing to fully investigate and produce witnesses for an adequate defense.
>
> VI. Defendant was denied a fair trial by the erroneous admission of tainted identifications.

The Michigan Court of Appeals affirmed Dawson's convictions, but it remanded the case to correct the judgment of sentence with respect to court costs. *See Thomas-Dawson*, 2017 WL 3316945, at *6. Dawson filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims he raised in the Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Thomas-Dawson*, 908 N.W.2d 914 (Mich. 2018). He then filed a § 2254 petition in this court and also moved for a stay and abeyance to allow him to return to state court to exhaust an actual-innocence claim based on a newly procured affidavit. (ECF No. 2.) The Court denied the motion but allowed Dawson to file an amended petition. (ECF No. 7.) He did not do so.

**II.**

The Antiterrorism and Effective Death Penalty Act (AEDPA)—28 U.S.C. § 2254 in particular—is "designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Thus, if a claim was "adjudicated on the merits in State court proceedings," this Court cannot grant

3

habeas corpus relief on the basis of that claim "unless the adjudication of the claim . . . resulted in a decision" (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d).

### III.

### A.

Dawson's petition first asserts that his counsel was ineffective for failing to raise a speedy trial challenge and failing to call an alibi witness. (ECF No. 1, PageID.21–30.) In his reply brief, Dawson also makes an argument about not voluntarily waiving his right to a jury trial. (ECF No. 11, PageID.554.)

To establish ineffective assistance of counsel, Dawson must show both that: (1) counsel's performance was deficient, i.e., "that counsel's representation fell below an objective standard of reasonableness" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). The test for prejudice is whether there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Dawson first argues that counsel was ineffective for failing to raise a speedy trial challenge. The Michigan Court of Appeals addressed this claim on the merits and found no violation of

Dawson's speedy trial rights. This decision was not contrary to or an unreasonable application of *Strickland*.

The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. To determine whether a speedy trial violation has occurred, the court must consider the following four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). No single factor is determinative; rather, a court must weigh them and engage in a "difficult and sensitive balancing process" to determine whether a constitutional violation has occurred. *Id.* at 533.

The Michigan Court of Appeals addressed these factors under analogous state law. *See Thomas-Dawson,* 2017 WL 3316945, at \*4. With respect to the first factor, the court found that less than 13 months had passed between Dawson's arrest and the first day of his trial. *Id.* "When the delay is more than 18 months, prejudice is presumed, and the prosecution must show that no injury occurred. . . . When the delay is less than 18 months, the defendant must prove that he or she suffered prejudice." *Id.* (internal citation omitted) (quoting *People v. Rivera*, 835 N.W.2d 464, 467–68 (Mich. Ct. App. 2013)). And under federal law, courts have generally found post-accusation delays that approach one year to be "presumptively prejudicial." *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992); *United States v. Brown*, 90 F. Supp. 2d 841, 846 (E.D. Mich. 2000). Although the delay between Dawson's arrest and the start of trial approached the range of presumptively prejudicial delays under federal (but not state) law, none of the other factors weigh strongly enough in Dawson's favor to have compelled the Michigan Court of Appeals to grant relief.

With respect to the second *Barker* factor, the reasons for the delay, the Court must determine "whether the government or the criminal defendant is more to blame for [the] delay." *Maples v. Stegall*, 427 F.3d 1020, 1026 (6th Cir. 2005) (quoting *Doggett*, 505 U.S. at 651). When evaluating a speedy trial claim, delays caused by the defense are to be weighed against the defendant. *Vermont v. Brillon*, 556 U.S. 81, 90 (2009); *see also United States. v. Brown*, 498 F.3d 523, 531 (6th Cir. 2007). Here, the state appellate court concluded:

> The delay was due, in part, to defendant's own actions. On September 21, 2015, defendant's first appointed attorney withdrew because defendant "filed a grievance" against him. Once defendant received new appointed counsel, there was further delay while the parties attempted to negotiate a plea deal. Additionally, replacement counsel was not available on the originally scheduled trial date of December 7, 2015, requiring delay until February 2016. Part of the delay was not caused by defendant, but by his codefendant Brown. Specifically, the court required time to determine whether Brown was competent to stand trial. Once Brown was deemed incompetent, the court severed defendant's trial. However, this delay was not the fault of either the court or the prosecutor and cannot be counted against the state.

*Thomas-Dawson*, 2017 WL 3316945, at *4. Thus, much of the delay was attributable to the conduct of Dawson and his counsel and the competency proceedings involving the co-defendant. It was reasonable for the appeals court to not count these delays against the prosecutor.

Regarding the third *Barker* factor, The Court of Appeals also correctly noted that defense counsel "*did* raise an objection on this [speedy trial] ground. At a hearing on November 10, 2015, defense counsel raised defendant's concern that there was a violation of the 180-day rule requiring dismissal of his case. The trial court denied defendant's claim on the merits. Any further objection would have been futile and counsel could not be found ineffective for failing to pursue it." *Id*. Finally, Dawson has shown no prejudice from any delay in the trial.

Thus, the Michigan Court of Appeals did not unreasonably apply *Strickland* in finding no violation of Dawson's speedy trial rights.

Dawson's petition also briefly refers to his counsel being ineffective for failing to investigate and produce alibi witnesses. (ECF No. 1.) And his reply brief suggests he did not voluntarily waive his right to a jury trial. (ECF No. 11.) The Michigan Court of Appeals found that these claims were abandoned for lack of argument. *Thomas-Dawson*, 2017 WL 3316945, at *4 n.3. Dawson makes no more meaningful argument here. He does not identify any witnesses who should have been investigated let alone called. Nor does he proffer any evidence in support of an alibi defense. He also fails to disclose any information regarding his counsel's advice about waiving a jury trial. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for federal habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 571 U.S. 12, 23 (2013) (alteration in original) (quoting *Strickland*, 466 U.S. at 689).

Dawson has therefore failed to demonstrate entitlement to habeas relief with respect to his ineffective assistance of counsel claim.

**B.**

Dawson next asserts that the identification of him as one of the perpetrators was the result of an unduly suggestive pretrial line-up identification procedure.

The Supreme Court has held that an identification violates a defendant's right to due process where the identification procedure was so unnecessarily suggestive as to run the risk of irreparable mistaken identification. *Stovall v. Denno*, 388 U.S. 293, 301–02 (1967). "It is the likelihood of misidentification which violates a defendant's right to due process." *Neil v. Biggers*, 409 U.S. 188, 198 (1972). As the Supreme Court has stated, "reliability is the linchpin in

7

determining the admissibility of identification testimony." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).

In terms of suggestiveness, Dawson asserts that he was the only individual with a tattoo who participated in the line-up. And he further contends that the two witnesses' identifications were unreliable under *Biggers*. After reciting the controlling Supreme Court standard, the Michigan Court of Appeals rejected this claim on the merits:

> The two eyewitnesses were able to closely observe defendant on the night in question as each had close encounters with him. Defendant stood close to Johnson as he forced Johnson at gunpoint to leave the gas station convenience store. Defendant then hit Johnson several times with his gun, again standing in close proximity to the victim. Evidence established that the outside area where defendant assaulted Johnson was well lit. Under these conditions, Johnson was able to focus carefully and almost exclusively on defendant. Glasper was also able to closely observe defendant as he and Brown walked directly toward her.
>
> The witnesses described defendant as a tall African-American man with "puffed up" hair, wearing a yellow shirt and riding in a black Monte Carlo with a plastic covered window. Defendant was located by police within an hour of Johnson's attack, wearing a yellow shirt and riding in a black Monte Carlo with a plastic covered window. He is tall and had "puffed up" hair at that time. The witnesses' descriptions appear accurate as they are complete strangers and yet they described the same assailant. While Johnson testified that defendant's yellow shirt was striking during the lineup, Johnson insisted that he recognized defendant's face. Further, there is no record indication that defendant's tattoos swayed either witness's identification.
>
> Moreover, both eyewitnesses were certain regarding their identification. And the lineup occurred less than 24 hours after Johnson's assault. Overall, defendant has not established that the lineup procedure was so prejudicial as to warrant relief.

*Thomas-Dawson*, 2017 WL 3316945, at *5. There is nothing unreasonable about this decision, and it is fully supported by the record.

A photocopy of the lineup is attached to the petition. (ECF No. 1, PageID.38.) It appears to depict eight men of approximately similar age, complexion, build, weight, height, and age. It cannot be determined from the copy whether Dawson was the only man with a tattoo. But as the

state appellate court noted, neither eyewitness' description of the perpetrator mentioned tattoos as an identifying feature. And Dawson acknowledges this. Indeed, he claims the witnesses' failure to mention his tattoos is one reason that their identifications are unreliable. (ECF No. 1, PageID.29.) He cannot have it both ways. There was simply nothing unduly suggestive about Dawson's line-ups. *See Hutsell v. Sayre*, 5 F.3d 996, 1005 (6th Cir. 1993) ("[T]he police are not required to conduct a search for identical twins in age, height, weight or facial features." (quoting *Hensley v. Carey*, 818 F.2d 646, 650 (7th Cir. 1987))). And irrespective of any suggestiveness, the identification of Dawson by the victim as well as Glasper were reliable for all of the reasons stated by the Michigan Court of Appeals. This claim was reasonably rejected by that court.

As Dawson's claim does not merit relief, the petition will be denied.

## IV.

Before Dawson may appeal this decision, the Court must determine whether to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2). Dawson must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). The Court finds that reasonable jurists would not debate the resolution of Dawson's claims because they are devoid of merit. The Court will therefore deny a certificate of appealability.

If Dawson chooses to appeal the Court's decision, he may proceed in forma pauperis. *See* 28 U.S.C. § 1915(a)(3).

**V.**

Accordingly, the Court DENIES WITH PREJUDICE the petition for a writ of habeas corpus, DENIES a certificate of appealability, and GRANTS permission to appeal in forma pauperis.

SO ORDERED.

Dated: April 23, 2020

                                      s/Laurie J. Michelson
                                      LAURIE J. MICHELSON
                                      UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on April 23, 2020.

                                      s/Erica Karhoff
                                      Case Manager to the
                                      Honorable Laurie J. Michelson